IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ERIC JOHNSON,

    Plaintiff,

  v.

FORD FOUNDATION, BARBARA
WYCKOFF-BAIRD, PETER A. KARDAS,
DEBRA SALAZAR,

    Defendants.

Civ. No. 04-6142-AA

OPINION AND ORDER

Aiken, Judge:

    Plaintiff, appearing *pro se*, alleges tortious interference with a business interest through defamation. Plaintiff's claim arises from allegedly defamatory statements about plaintiff contained in a "Mid-Program Review" of plaintiff's alleged employer prepared and published by defendants Kardas and Salazar and disseminated by defendant Wyckoff-Baird. Plaintiff alleges that Kardas and Salazar were agents of defendant Ford Foundation and

Page 1    OPINION AND ORDER

acting under the direction and control of defendant Wyckoff-Baird.

On May 4, 2005, defendants filed motions for summary judgment. Given plaintiff's *pro se* status, the court provided plaintiff with the requisite notice pertaining to motions for summary judgment. Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998) (en banc). Defendants' motions are granted.

## BACKGROUND

The Ford Foundation is a nonprofit organization that provides charitable grants to other organizations in furtherance of its mission statement. Several years ago, the Ford Foundation funded a program entitled "The Community-Based Forestry Demonstration Program." The program's purpose is to "provide sustainable new jobs and increased family income to forest-dependent communities while improving the ecological health of forest assets." Affidavit of Jeffrey Campbell, p. 2.

The Aspen Institute, Inc. (Aspen Institute) serves as the managing partner of grants for the Community-Based Forestry Demonstration Program. The Aspen Institute's duties include the oversight of agencies and organizations receiving grants from the Ford Foundation, to ensure such funds are being used wisely and in furtherance of the Community Based Forestry Demonstration Program. Defendant Wyckoff-Baird is a Senior Program Associate in the Community Strategies Group of the Aspen Institute.

In August 2000, The Alliance of Forest Workers and Harvesters

(the Alliance) became a grantee of funds through the Community-Based Forestry Demonstration Program. The Alliance is a member-based organization that seeks to assist workers in participating in decision-making processes that affect their work and to develop skills and engage in economic opportunities offered through the restoration and non-timber forest products economy. In her position with Aspen, Wyckoff-Baird oversaw the Alliance's use of grant monies and provided technical support to the Alliance.

From June 2002 to June 2003, plaintiff was an independent contractor with the Alliance. On June 16, 2003, at the end of his one-year tenure with the Alliance, plaintiff received an exit interview with Alliance Director Bradley Porterfield and received a written evaluation of his work. Plaintiff was not asked to enter into a new contract with the Alliance after June 2003.

In 2003, as a result of concerns regarding the ability of the Alliance to complete the activities of the grant, the Ford Foundation and the Aspen Institute decided to have the Aspen Institute conduct a review of the Alliance. The Ford Foundation did not participate in the review of the Alliance. Instead, the Community Strategies Group (CSG) of the Aspen Institute was responsible for guiding the review process.

On or about May 28, 2003, CSG contracted with defendants Peter Kardas, Ph.D., the director of the Labor Education & Research Center at Evergreen State College and Debra Salazar, PH.D., a

professor at Western Washington University, to investigate and review the Alliance's performance.

As part of their review, Kardas and Salazar were required to prepare a written report: 1) reviewing the work, performance, and results of the Alliance to date; 2) assessing the progress of the Alliance in diversifying its funding base; and 3) recommending modifications in focus or approach methods, training, or other areas needed to improve performance.

Defendants Kardas and Salazar conducted field work, attended Alliance meetings and interviewed Alliance staff, board members, general members, and outreach workers. The interviews were conducted in person and by telephone. The resulting report prepared by Kardas and Salazar was based entirely on their personal observations and information reported to them by Alliance staff and members. A recurring theme in the interviews included negative comments and feedback regarding plaintiff's involvement with the Alliance, which was reflected in the draft report.

On July 6 or 7, 2003, Kardas and Salazar submitted their first draft report to Wyckoff-Baird by electronic mail. On July 11, 2003, Kardas requested clarification regarding the distribution of the report, and Wyckoff-Baird responded that the draft report was available only to the Alliance board members and staff. Wyckoff-Baird e-mailed a copy of the draft to Porterfield for review and comment by the Alliance board members.

In October 2003, a final draft of the report along with the Alliance's formal written response were sent to the Ford Foundation.

Plaintiff obtained a copy of the draft report from Porterfield a few days after July 7, 2003 and several weeks after the termination of his independent contract with the Alliance. Plaintiff concedes that he was not employed and did not have an employment contract with the Alliance as of July 7, 2003.

On May 29, 2004, plaintiff filed this action. Plaintiff claims that defamatory statements regarding him appeared in the final report authored by Kardas and Salazar, and that Wyckoff-Biard circulated the defamatory report to the Alliance and urged the Alliance to terminate plaintiff's employment. Plaintiff alleges that his employment was terminated as a result, and that he suffered damage to his reputation and economic and non-economic damages in the amount of $750,000. In addition to damages, plaintiff seeks attorney fees, costs and disbursements.

## DISCUSSION

Defendants assert several arguments in support of their motions for summary judgment. First, defendants argue that the statements regarding plaintiff contained in the review were either opinion or true. Second, defendants argue that the statements are protected by a qualified or conditional privileged and cannot support plaintiff's claim of defamation. Finally, defendant Ford

Foundation argues that it did not make or publish the statements and therefore cannot be held liable as a matter of law.

While I agree that the Ford Foundation cannot be liable because it neither made nor published the allegedly defamatory statements, see L&D of Oregon, Inc. v. American States Ins. Co., 171 Or. App. 17, 22, 14 P.3d 617 (2000), I find summary judgment is warranted as to all defendants because the statements contained in the report are protected under a conditional privilege.

An alleged defamatory statement is subject to a qualified or conditional privilege if: 1) it was made to protect the interests of the defendant; 2) it was made to protect the interests of the plaintiff's employer; or 3) it was on a subject of mutual concern to the defendant and the person to whom the statement was made. Wattenburg v. United Medical Lab., 269 Or. 377, 378, 525 P.2d 113 (1974); see also DeLong v. Yu Enter., Inc., 334 Or. 166, 170, 47 P.3d 8 (2002); Lund v. Arbonne Int'l, Inc., 132 Or. App. 87, 95, 887 P.2d 817, 824 (1994) ("A statement that is otherwise defamatory is privileged if it is uttered under such circumstances that the law grants immunity to the speaker.").

Here, it is undisputed that the report authored by Kardas and Salazar was prepared to protect the interests of the Ford Foundation in overseeing the Alliance's use of grant money received from the Ford Foundation, and therefore was of mutual concern to all defendants. However, a conditional privilege to utter a

defamatory statement

> may be lost if the speaker does not believe that the statement is true or lacks reasonable grounds to believe that it is true; if it is published for a purpose other than that for which the particular privilege is given; if the publication is made to some person not reasonably believed to be necessary to accomplish the purpose; or if the publication includes defamatory matter not reasonably believed to be necessary to accomplish the purpose.

Lund, 132 Or. App. at 96, 887 P.2d 817. "The burden of proving an abuse of the qualified privilege, however, rests upon the plaintiff." Walsh v. Consolidated Freightways, 278 Or. 347, 356, 563 P.2d 1205 (1977); DeLong, 334 Or. at 170, 47 P.3d 8 ("Oregon recognizes the defenses of qualified privilege and absolute privilege to allegations of defamation. The former requires a plaintiff to prove that a defendant acted with actual malice; the latter bars the defamation claim altogether.").

Here, plaintiff presents no evidence suggesting that Kardas and Salazar did not believe or have reasonable grounds to believe the accuracy of the statements contained in the report. The draft report was based on interviews of Alliance board members and staff conducted by Kardas and Salazar and their own observations. Statements in the report concerning plaintiff were based on Alliance staff and members' perception of plaintiff and involved issues that had been raised previously by Alliance board members. See Affidavit of John McIlhenny, Ex. F (Affidavit of William J. Knight). Indeed, in his deposition plaintiff admitted that he had no evidence that Kardas and Salazar, or any defendant, had reason

to believe that the information obtained by Kardas and Salazar during the course of their interviews was false. Affidavit of John McIlhenny, Ex. A., p. 61 (Transcript of Proceedings, Dec. 13, 2004, p. 177).[1]

Further, plaintiff offers no evidence that the report was not published for its intended purpose, included material unnecessary for its intended purpose, or was published to an unnecessary party. It is undisputed that Kardas and Salazar submitted their draft report to Wyckoff-Baird only, and that she in turn disseminated the draft to Alliance board members for review and comment. Plaintiff also presents no evidence that either Kardas, Salazar, or Wyckoff-Baird urged the Alliance to terminate plaintiff's independent contract. In fact, plaintiff's contract had been terminated prior to the completion of the draft report on July 7, 2005. Therefore, no evidence suggests that defendants exercised the privilege in an unreasonable manner.

---

[1] Plaintiff sought to compel the Ford Foundation and Wyckoff-Baird to respond to interrogatories served on July 27, 2005 and received by counsel on August 1, 2005. Plaintiff maintained that such discovery was essential to complete his response. Plaintiff failed to confer regarding his motion and in fact filed the motion before the interrogatory responses were due, and the motion is denied on these grounds. Regardless, based on Wyckoff-Baird's response to the motion, all non-privileged discovery pertaining to plaintiff's requests have been produced, with the exception of a description of work-related duties for Jeffrey Campbell, the Senior Program Officer for Community and Resource Development at the Ford Foundation. I do not find that this request is relevant to the issues in this case or would lead to the discovery of relevant and admissible evidence.

In sum, plaintiff offers no evidence that Kardas or Salazar made the statements in the report with malice or an improper motive. DeLong, 334 Or. at 170, 47 P.3d 8; Johnson v. Brown, 193 Or. App. 375, 380, 91 P.3d 741 (2004) ("The defense of qualified privilege can be overcome if the alleged defamatory statements were made in bad faith or with malice."). Rather, plaintiff complains that Kardas and Salazar did not interview him or his supporters to obtain a different and perhaps more accurate version of events. Regardless, the fact that Kardas and Salazar did not conduct interviews as completely as plaintiff would have liked does not constitute a misuse of the privilege. Accordingly, the statements in the report cannot support plaintiff's claims.

## CONCLUSION

Defendants' Motions for Summary Judgment (docs. 34, 43, 57) are GRANTED. Defendants Kardas and Salazar's Motion to Strike (doc. 54), defendant Ford Foundation's Motion and Renewed Motion for Dismissal for failure to respond (docs. 62, 84), and plaintiff's Motion to Compel (doc. 81) are DENIED. This case is DISMISSED.

IT IS SO ORDERED.

Dated this ___ day of October, 2005.

_____
Ann Aiken
United States District Judge